IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **EUGENE SHIVERS,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. JKB-19-2434** |
| **ANDREW SAUL, COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Eugene Shivers ("Plaintiff") filed suit against Andrew Saul, Commissioner of the Social Security Administration ("Defendant"), alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act") and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* (Compl., ECF No. 1.) Defendant moves to dismiss, or in the alternative, for summary judgment. (ECF No. 14.) No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendant's motion to dismiss will be GRANTED in part and DENIED in part.

## I. *Background and Procedural History*[1]

At all relevant times, Plaintiff has worked as an Employer Reporting Technician in the Social Security Administration ("SSA")'s Division of Earnings and Business Services, Office of Earnings and International Operations, and Office of Central Operations. (Compl. ¶ 20.) In 2014, Plaintiff alleges that he was diagnosed with a Traumatic Brain Injury, a Cognitive Communication Deficit,

---

[1] The facts in this section are taken from the Complaint and construed in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

and a slow rate of mental processing as a result of a near-fatal car accident, and these conditions render him disabled within the meaning of the Rehabilitation Act. (*Id.* ¶¶ 22–23.)

Plaintiff alleges that he has been subjected to a variety of adverse employment actions as a result of his disability. First, Plaintiff argues that his supervisors unreasonably denied six Reasonable Accommodation requests for workplace accommodations in 2015 and 2017. (*Id.* ¶¶ 24–32.) Plaintiff submitted three separate requests for a flexible work schedule to accommodate "the reversal of his sleep/wake cycle" on September 15, 2015, November 17, 2015, and February 1, 2017. (*Id.* ¶¶ 26–27, 29.) On November 30, 2015, Plaintiff requested permission to use one large computer monitor (instead of dual monitors) because of the limited range of motion in his neck caused by his disabilities. (*Id.* ¶ 28.) To accommodate the fatigue caused by his disabilities, Plaintiff requested periodic rest breaks on March 7, 2017. (*Id.* ¶ 30.) Lastly, on July 20, 2017, Plaintiff requested that someone assist him during meetings with management to ensure that he understood management's communications because of the memory problems caused by his disabilities. (*Id.* ¶ 31.)

Plaintiff further alleges that Defendant unfairly charged him as Absent Without Leave ("AWOL") on several occasions in 2017. (*Id.* ¶ 33.) Based on a request that Plaintiff made under the Family and Medical Leave Act (the "FMLA"), Defendant allowed Plaintiff to arrive at work up to one hour after his official work start time up to three times per week. (*Id.* ¶ 34.) If Plaintiff was late by more than one hour, management would grant him one hour of FMLA leave and charge him AWOL for the remaining time exceeding the hour. (*Id.*) In April 2017, Brian Carreras, one of Plaintiff's first-level supervisors, proposed that Plaintiff be suspended for five days for the charge of being AWOL on twelve separate occasions in 2016 and 2017. (*Id.* ¶ 35.) Although Plaintiff stated in writing that he disagreed with Carreras' proposal, the proposed suspension was

upheld by Branch Manager Rene Phillips, one of Plaintiff's second-level supervisors, and Plaintiff served the suspension in June 2017. (*Id.* ¶¶ 36–38.)

In April 2017, Phillips told Plaintiff that he would be required to report to another building, purportedly in response to allegations that Plaintiff made threats against someone. (*Id.* ¶ 39.) Plaintiff's supervisors did not give Plaintiff any information about the allegations against him, despite Plaintiff's "several requests for information." (*Id.*) After more than a month of reporting to another building, Plaintiff was told to return to his former building in May 2017. (*Id.* ¶ 40.) Although Plaintiff told management that "he was fearful for his safety and he did not want to return to his former building," management told Plaintiff to go back anyway. (*Id.*)

Additionally, on or about March 9, 2018, Plaintiff's access to the Agency's computer systems was denied. (*Id.* ¶ 41.)

Plaintiff filed Equal Employment Opportunity ("EEO") complaints alleging discrimination and hostile work environment on January 23, 2017, June 23, 2017, and July 25, 2018. (*Id.* ¶ 9; Mot. Dismiss Exs. 23, 27, 33, ECF Nos. 14-25, 14-29, 14-35.) After Defendant completed Reports of Investigations ("ROI") and Plaintiff requested an Equal Employment Opportunity Commission ("EEOC") hearing, Administrative Judge Enechi A. Modu issued an order consolidating Plaintiff's EEO complaints on March 29, 2019. (Compl. ¶¶ 14–16.) On April 18, 2019, Plaintiff withdrew his request for a hearing and requested a Final Agency Decision. (*Id.* ¶ 17.) On May 24, 2019, Administrative Judge Modu issued a Memorandum and Order of Dismissal with prejudice, remanding to the SSA for issuance of a Final Agency Decision. (*Id.* ¶ 18.) Three days after Plaintiff filed his Complaint, the SSA issued its Final Agency Decision on August 25, 2019, finding that the SSA did not discriminate against Plaintiff based on failure to provide reasonable accommodations, disability, or prior EEO activity. (Mot. Dismiss Ex. 42 at 40, ECF No. 14-44.)

Plaintiff sued Defendant for violations of the Rehabilitation Act and Title VII. (Compl. ¶¶ 1, 4.) Plaintiff claims that Defendant unlawfully discriminated against him under the Rehabilitation Act "by denying Plaintiff's requests for a flexible work schedule, charging Plaintiff AWOL, requiring Plaintiff to report to a different building, denying Plaintiff's requests to take leave as needed, and denying Plaintiff's computer systems access." (*Id.* ¶ 50.) Plaintiff also claims that the aforementioned actions constituted unlawful retaliation in violation of Title VII in response to Plaintiff's EEO complaints of discriminatory harassment and requests for reasonable accommodations. (*Id.* ¶ 61.)

## II. *Legal Standard*

Defendant moves to dismiss, or in the alternative, for summary judgment. (Mot. Dismiss, ECF No. 14.) To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. An inference of a mere possibility of misconduct is insufficient to support a plausible claim. *Id.* at 679. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss, a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

4

Defendant moves in the alternative for summary judgment and proffers several documents in support. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), which provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d) (emphasis added). "Nevertheless, a district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings . . . or to reject it or simply not consider it.'" *Sager*, 855 F. Supp. 2d at 542 (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2004)).

For a court to convert a motion to dismiss into one for summary judgment, the Fourth Circuit requires that "the parties first be afforded a reasonable opportunity for discovery." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (internal citations and quotations omitted). Although Defendant argues that Plaintiff squandered his "ample opportunity" to undertake discovery during the administrative proceedings in this case (*see* Reply Mem. Supp. of Mot. Dismiss at 5, ECF No. 29), the Court finds that Plaintiff "should not be denied the opportunity to use the discovery provisions of the Federal Rules of Civil Procedure to supplement the record before adjudication of the merits of the case." *Plummer v. Wright*, Civ. No. TDC-16-2957, 2017 WL 4417829, at *4 (D. Md. Oct. 3, 2017). As a result, the Court does not reach Defendant's motion in the alternative for summary judgment and Plaintiff's request for discovery to respond to the motion for summary judgment pursuant to Rule 56(d). (Opp'n to Mot. Dismiss Ex. A, ECF No. 24-1.) Accordingly, the Court will decline to exercise its

discretion under Rule 12(d) and will instead evaluate Defendant's motion pursuant to Rule 12(b)(6), excising the supplemental exhibits from its consideration.

## III. Analysis

Defendant argues that Plaintiff fails to state a claim for (1) discrimination under the Rehabilitation Act; (2) failure to accommodate under the Rehabilitation Act; and (3) retaliation under Title VII. (Mot. Dismiss Mem. Supp., ECF No. 14-1.)

### A. Rehabilitation Act—Disability Discrimination

The Rehabilitation Act makes it unlawful for the federal government to discriminate against an "otherwise qualified individual with a disability . . . solely by reason of his or her disability." 29 U.S.C. § 794(a). Where a plaintiff does not provide direct evidence of discrimination, courts apply the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Abilt v. Cent. Intel. Agency*, 848 F.3d 305, 315 (4th Cir. 2017). To establish a *prima facie* case of disparate treatment under the Rehabilitation Act, a plaintiff must show: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he suffered an adverse employment action because of his disability. *Fierce v. Burwell*, 101 F. Supp. 3d 543, 552 (D. Md. 2015) (citation omitted). Although the Supreme Court has held that a plaintiff need not plead a *McDonnell Douglas prima facie* case at the motion to dismiss stage, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), the plaintiff must plead facts sufficient to state each element of the asserted claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003).

The Court first considers whether Plaintiff suffered an adverse employment action, "an absolute precondition" to any employment discrimination suit. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). An adverse employment action is a discriminatory act that

"adversely affect[s] the terms, conditions, or benefits of a plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001), *abrogated on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006)). Of import here, an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Typical adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). However, "not everything that makes an employee unhappy is an actionable adverse action." *Settle v. Balt. Cnty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999) (internal citation omitted), *aff'd* 203 F.3d 822 (4th Cir. 2000), *and aff'd sub nom. Harris v. Earp*, 203 F.3d 820 (4th Cir. 2000).

Plaintiff alleges that the following constituted adverse employment actions: (1) denying Plaintiff's requests for a flexible work schedule; (2) charging Plaintiff AWOL; (3) requiring Plaintiff to report to a different building; (4) denying Plaintiff's requests to take leave as needed; and (5) denying Plaintiff's computer systems access.[2] (Compl. ¶ 50.) Only Plaintiff's AWOL charges, however, constitute an adverse employment action for the purposes of his discrimination claim.

---

[2] In his opposition to Defendant's motion to dismiss, Plaintiff added that his removal from the job of taking calls also constituted an adverse employment action (Opp'n to Mot. Dismiss at 19, ECF No. 24), but the Court does not consider this argument because a plaintiff may not amend his complaint in a response to a motion to dismiss. *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997).

7

Many courts, including this one, have held that an employer's refusal to allow a flex schedule does not qualify as an adverse employment action. *See, e.g., Terry v. Perdue*, Civ. No. JKB-18-31, 2018 WL 4494883, at *5 (D. Md. Sept. 19, 2018); *Carter v. Va. Dep't of Game & Inland Fisheries*, Civ. No. MHL-16-0661, 2017 WL 4413192, at *13 (E.D. Va. Sept. 29, 2017). Likewise, requiring Plaintiff to report to a different building during the investigation of the allegations against him and denying Plaintiff's requests to take leave as needed did not affect the terms and conditions of his employment. *See Rock v. McHugh*, 819 F. Supp. 2d 456, 470 (D. Md. 2011) (moving a defendant from an office with windows to a cubicle did not constitute an adverse employment action); *Dailey v. Lew*, Civ. No. GLR-15-2527, 2016 WL 1558150, at *5–6 (D. Md. Apr. 18, 2016) (finding no adverse employment action where a defendant imposed leave restrictions on plaintiff). Further, Plaintiff does not explain how the denial of his computer systems access on one day in March 2018 affected the terms and conditions of his employment.

Generally, an AWOL charge without any further negative consequences does not rise to the level of an adverse employment action. *See, e.g., Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 397 (D. Md. 2002). In this case, however, Plaintiff's AWOL charges resulted in a five-day unpaid suspension, and such decrease in pay qualifies as an adverse employment action that affected the terms and conditions of Plaintiff's employment. *See Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 705–706 (D. Md. 2003).

Although Plaintiff's unpaid suspension was an adverse employment action, Plaintiff fails to plausibly plead that his suspension was imposed because of his disability. In Plaintiff's Complaint, he alleges that "[o]ther employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment" and that Plaintiff "believes he was subjected to discrimination because of his

8

disability." (Compl. ¶¶ 55–56.) Although plaintiffs in employment discrimination suits are not required as a matter of law to point to a similarly-situated comparator, *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003), where a plaintiff's evidence of discrimination centers "upon a comparison to an employee from a non-protected class, . . . the validity of [his] prima facie case depends upon whether that comparator is indeed similarly situated," *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). Plaintiff's passing reference to disparate treatment is unsubstantiated by any factual allegations, and such conclusory allegations are insufficient to state a claim for relief. *See Terry*, 2018 WL 4494883, at *9 (citing *Twombly*, 550 U.S. at 555). Accordingly, Plaintiff's claim of discrimination under the Rehabilitation Act fails.

### B.   *Rehabilitation Act—Failure to Accommodate*[3]

Plaintiff also claims that by denying his six Reasonable Accommodation requests in 2015 and 2017, Defendant failed to accommodate his disabilities in violation of the Rehabilitation Act. (Compl. ¶ 49.) To establish a claim for failure to accommodate under the Rehabilitation Act, a plaintiff must show that (1) he has a disability; (2) his employer knew of the disability; (3) with reasonable accommodations he is otherwise qualified to perform the essential functions of the employment position in question; and (4) his employer refused to make such reasonable accommodations. *Lewis v. Gibson*, 621 F. App'x 163, 164 (4th Cir. 2015), *cert. denied sub nom. Lewis v. McDonald*, 136 S. Ct. 840 (2016) (mem.).

"Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "Not every job-related request

---

[3] Although Plaintiff treats the disability discrimination and failure to accommodate claims under the Rehabilitation Act jointly in Count One of his Complaint (*see* Compl. ¶ 49), the Court analyzes each claim separately.

9

by a disabled employee that is denied by his employer will subject the employer to liability for failure to provide a reasonable accommodation." *See Fierce*, 101 F. Supp. 3d at 550. Rather, the denial of a request by a disabled employee could subject the employer to liability only if there is "a causal relationship between the disability and the request for accommodation," or, in other words, if "the requested accommodation was *necessary* in order for [him] to perform the essential functions of [his] job." *Id.* (quoting *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997) (emphasis added)).

Here, like in *Fierce*, Plaintiff fails to explain why any of the Reasonable Accommodations that he requested were necessary for him to perform the essential functions of his job at the SSA. 101 F. Supp. 3d at 549–50. In Plaintiff's Complaint, he argues that his three requests for a flexible work schedule were "due to the reversal of his sleep/wake cycle caused by his disabilities." (Compl. ¶¶ 26–27, 29.) He further alleges that he "requested permission to use one large computer monitor because due to his disabilities, it is difficult for him to use dual monitors, given the neck action required to turn and use two monitors." (*Id.* ¶ 28.) Plaintiff also "requested periodic rest breaks due to fatigue caused by his disabilities." (*Id.* ¶ 30.) Further, he "requested someone to assist him during meetings with management due to memory problems to ensure he understood management's communications." (*Id.* ¶ 31.) Plaintiff's Complaint contains no factual allegations regarding why his disabilities necessitated the requested accommodations for him to perform the essential functions of his role as an Employer Reporting Technician. Indeed, Plaintiff merely argues that management's denials of his requests "were unreasonable because Plaintiff's requested workplace accommodation [sic] were reasonable." (*Id.* ¶ 32.) Such a tautological conclusion falls short of the pleading standard articulated in *Twombly*, and as such, Plaintiff's failure to accommodate claim under the Rehabilitation Act must also be dismissed. 550 U.S. at 555 ("While

10

a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

### C. *Title VII—Retaliation*

Title VII prohibits an employer from "discriminat[ing] against any individual" because that individual "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C.A. § 2000e-3(a). As with discrimination claims, plaintiffs may prove retaliation either through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas*. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Whether a plaintiff proceeds by direct evidence or the *McDonnell Douglas* burden-shifting method, he must show that (1) he engaged in protected activity; (2) his employer took an adverse employment action against him; and (3) there is a causal relationship between the protected activity and the adverse employment action. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 577 (4th Cir. 2015).

Plaintiff argues that both his EEO complaints starting in January 2017 and his Reasonable Accommodation requests starting in September 2015 constituted protected activities under Title VII. (Compl. ¶ 61.) Plaintiff alleged that his supervisors became aware of this protected activity "when they were informed by Plaintiff as part of the complaint process through Defendant's EEO office or were otherwise informed about Plaintiff's EEO activity" and that they were also informed about Plaintiff's Reasonable Accommodation requests. (*Id.* ¶ 65.) Plaintiff alleges that "[s]oon after complaining," he was subjected to unlawful retaliation under Title VII. (*Id.* ¶ 62.) Defendant

11

allegedly retaliated "by denying Plaintiff's requests for a flexible work schedule, charging Plaintiff AWOL, requiring Plaintiff to report to a different building, denying Plaintiff's requests to take leave as needed, and denying Plaintiff's computer systems access." (*Id.* ¶ 63.)

As to the first prong, Plaintiff's EEO complaints and Reasonable Accommodation requests clearly constituted protected activity within the meaning of Title VII. *See, e.g., Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (explaining that filing an EEO complaint constitutes protected activity); *Terry*, 2018 WL 4494883, at *6 (naming, *inter alia*, Reasonable Accommodation requests as protected activities).

Second, Plaintiff's five-day unpaid suspension as a result of his AWOL charges constitutes an adverse employment action for the purposes of his retaliation claim.[4] Unlike for a discrimination claim, a plaintiff claiming retaliation need not demonstrate that an adverse action affected his "terms or conditions of employment." *White*, 548 U.S. at 70. Instead, he must allege that the action was "materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citations omitted). The purpose of the material adversity standard is to "separate significant from trivial harms" in the "particular circumstances" of the plaintiff. *Id.* For example, while "[a] supervisor's refusal to invite an employee to lunch is normally trivial," a decision to "exclud[e] an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id.* at 69.

---

[4] Although in his opposition to the motion to dismiss Plaintiff alleges additional adverse employment actions, including "write-ups, counselings [sic], accusations of being AWOL . . . accusations of not performing his job duties," a month-long suspension, and a negative performance review (*see* Opp'n to Mot. Dismiss at 21–22), the Court does not consider these additional facts because a plaintiff may not amend his complaint in his response to the motion to dismiss. *Zachair*, 965 F. Supp. at 748 n.4.

12

Although the material adversity standard is less stringent than the adverse action test for discrimination claims under the Rehabilitation Act, *see, e.g., Madock v. McHugh*, Civ. No. ELH-10-02706, 2011 WL 3654460, at *26 (D. Md. Aug. 18, 2011) (internal citation omitted), only the AWOL charges upon which Plaintiff's five-day unpaid suspension were based constitute an adverse action for the purposes of Plaintiff's retaliation claim. Neither the denial of Plaintiff's requests for a flexible work schedule nor Plaintiff's requests to take leave as needed qualify as materially adverse. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (removing the plaintiff from an alternative work schedule did not constitute a materially adverse action). Plaintiff also does not explain why requiring Plaintiff to report to a different building during the investigation of the complaint against him or denying Plaintiff's computer systems access for one day in March 2018 would deter a reasonable employee from complaining about discrimination. On the other hand, for the reasons described above, *see supra* § III.A, Plaintiff's five-day suspension also constitutes an adverse employment action for the purposes of his retaliation claim.

Third, Plaintiff alleges a plausible causal connection between his protected activities and the five-day suspension. There must be "very close" temporal proximity between an employer's knowledge of an employee's protected activity and an adverse action against that employee to demonstrate a retaliatory motive. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fourth Circuit has explained, for example, that in some circumstances, the passage of two months between a protected activity and an adverse employment action may be "sufficiently long so as to weaken significantly the inference of causation." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). Here, Plaintiff alleges a series of protected activities, starting with Reasonable Accommodation requests in September 2015 and continuing through his EEO complaints, which caused Defendant to retaliate through the imposition of a five-day suspension. (Compl. ¶ 61.)

13

Carreras proposed Plaintiff's suspension on April 27, 2017, and Plaintiff ultimately served that suspension from June 9, 2017 to June 23, 2017. (*Id.* ¶¶ 35, 38.) Thus, the proposal of the suspension was made almost two months after Plaintiff made a Reasonable Accommodations request for "periodic rest breaks" on March 7, 2017. (*Id.* ¶¶ 30, 35.) Although the time lapse between Plaintiff's protected Reasonable Accommodation request and the suspension could weaken the inference of causation and Defendant alleges that its nondiscriminatory reason for applying the suspension was adherence to its own leave policies, the Court cannot conclude, as a matter of law, that Plaintiff's suspension was not a response to his Reasonable Accommodation request. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013). As a result, Plaintiff's retaliation claim under Title VII survives Defendant's motion to dismiss.

### IV. Conclusion

For the foregoing reasons, an Order shall enter GRANTING IN PART Defendant's motion to dismiss (ECF No. 14) Plaintiff's discrimination and failure to accommodate claims under the Rehabilitation Act (Count One) and DENYING IN PART Defendant's motion to dismiss Plaintiff's retaliation claim under Title VII (Count Two).

DATED this _2_ day of December, 2020.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge